THE STATE OF IOWA, Appellee, v. ALBERT POSTAL, Appellant

1. Verdict of Assault with Intent to Commit Manslaughter: EVIDENCE. The defendant, while assisting a husband in the forcible abduction of his wife from the house of her parents, where she was residing, became engaged in a conflict with the wife's father, and in the course thereof a revolver held by the defendant in his hand was discharged, inflicting a wound in the father's knee. The defendant claimed that the revolver was discharged by accident. *Held*, that evidence was sufficient to support a verdict of an assault with intent to commit manslaughter.

2. ———: SENTENCE: REDUCTION. The youth and previous good character of a defendant in such case will not be deemed sufficient ground for reducing a sentence of six months in the penitentiary.

3. ———: INSTRUCTIONS TO THE JURY: VERDICT. The court having instructed the jury that, if the defendant "pointed the revolver at the leg of said L., and fired the same at said point in the body of L., * * * he is to be presumed to have made the assault with intent to inflict great bodily injury;" and the wound made by the defendant being in the leg, just above the knee, *held*, that the latter fact did not warrant the presumption that the defendant pointed the revolver at the leg of L., intending only to inflict the wound made, and that, therefore, the verdict of assault with intent to commit manslaughter was in conflict with the above instruction.

*Appeal from Cherokee District Court.*—HON. C. H. LEWIS, Judge.

FRIDAY, OCTOBER 16, 1891.

THE defendant was indicted for an assault to commit murder, and was convicted of an assault with intent to commit manslaughter, and sentenced to imprisonment in the penitentiary for six months. He now appeals to this court.—*Affirmed*.

*J. D. F. Smith*, for appellant.

*J. Y. Stone*, Attorney General, and *Thos. A. Cheshire*, for the State.

BECK, C. J.—I. Counsel for the defendant first insists that the verdict is without the support of the evidence, and that on this ground it ought to be reversed. We are of the contrary opinion. The evidence quite satisfactorily shows these, among other, points: One Mooney, who is sometimes designated in the abstract as "Dr. Mooney," induced defendant and two others to accompany him to Cherokee, and render him assistance in securing the custody of his wife, and in taking her with them to the house of one of the other parties. The wife was at the home of her parents, and Mooney represented that she was willing to live with him, but was prevented from doing so by her parents. The plan agreed to be followed by the parties was the forcible abduction of the wife in the night-time. It was expected she would be found at church, from whence she was to be taken in a vehicle with her husband and his friends to the house of one of the parties at some distance from Cherokee. On their way to Cherokee the party prepared themselves for their adventure by cutting bludgeons or clubs, which they took with them in the vehicle, and by drinking whiskey from a bottle which they had with them. They reached Cherokee after dark, and, finding the wife was not at the meeting where they expected to find her, they proceeded to the house of her parents, and, discovering

*Margin note: 1. VERDICT of assault with intent to commit manslaughter: evidence.*

that she was with them, Mooney and the defendant proceeded to enter, the door being opened in response to a knock for admission. Immediately a contest arose between them and the wife's parents, in which blows were given and received by each party. It is needless to inquire further into the beginning or character of the conflict. The witnesses of the parties do not agree upon the particulars. It is sufficient for our purpose to know that it was brought about by the lawless violence planned and executed by Mooney and his friends. In the conflict a revolver, which Mooney had handed to the defendant just before they entered the house was discharged, inflicting an inconsiderable wound upon the knee of Lusk, the wife's father.

The defendant claims that the revolver was discharged by accident while in his hand. His evidence on this point has no support of other witnesses or of circumstances. The fact is he had the revolver in his hand during the fight, and it was discharged while he held it. His claim that the discharge was the result of accident, or was caused by blows with a wash-board inflicted by the father upon him, some of them striking his hand, is utterly unreasonable. It will not do to excuse a pistol shot during a fight, when the weapon is in the hand of one of the parties, on the ground of accident. Men in fights with pistols in their hands usually discharge them intentionally, and not accidentally. The evidence clearly shows that the defendant was engaged in an unlawful enterprise, intending violence, and was armed with a club and a pistol, and that he fired the shot which inflicted the wound. Surely the evidence amply supports the verdict found by the jury, viz., an assault with intent to commit manslaughter, which is a crime of lower degree than the crime for which defendant was indicted. See *State v. White*, 45 Iowa, 325. If death had resulted from the shot, the crime would not have been less than

manslaughter. As the assault did not result in death, the verdict must be regarded as having sufficient support in the evidence.

II. Counsel for the defendant base an objection to the judgment on the ground that the indictment ·charges an assault on Lusk with intent to commit murder "by deliberately discharging a revolver loaded with powder and ball at his knee." Neither this language, nor the thought it presents, to the effect that the aim was at the knee, is found in the indictment.

III. It is said that the defendant is young, and possessed of a good character, and, therefore, the 2. ——: sentence: punishment is severe. We do not concur reduction. in this view. His offense is of a grave character. He entered upon an unlawful enterprise, with the intent of using violence, in preparation for which he was armed with a deadly weapon. His criminal intent clearly appears. The good of society demands that the law against violence of this kind be so enforced that it have a restraining influence upon men of all ages and conditions of life.

IV. The district court instructed the jury that, if the defendant "pointed the revolver at the leg of said 3. ——: instruc- Lusk, and fired the same at said point in tions to jury: the body of Lusk, and did this ·without verdict. cause, he be presumed to have made the assault with intent to inflict great bodily injury." It is said that, as the wound was in the leg just above the knee, the presumption arises that the defendant pointed the pistol at the leg, and intended to inflict the wound upon the limb. The conclusion is, therefore, reached that the jury ought to have found that the defendant fired the pistol at the leg, and, in obedience to the instruction just quoted, ought to have found him guilty of the assault with the intent to commit great bodily injury. It is, therefore, said that the verdict is in conflict with the instruction. But it

cannot be admitted that the presumption relied upon to support this position under consideration arises in this case. There is no presumption that a man always intends to do the very thing he does do. Such a presumption would be inconsistent with the fact that men cannot always do what they attempt. Their skill, ability or their natural senses, upon which they rely to execute their purposes, may be at fault and defeat their purposes. One firing a pistol may aim at the vital parts, and hit a limb or other part of the body upon which no mortal wound would be inflicted. Surely, such a presumption as is suggested, if recognized, would render it impossible to convict for an assault with intent to commit murder, except in cases where wounds are inflicted upon parts of the body near the vital organs, or when the wound be necessarily mortal. And the same reasoning, used in support of the position under consideration, may be applied with the same force to the case where a pistol is fired and wholly misses the one assaulted. It could, with the same reason, be claimed that, as the accused missed the body and the limbs of the one at whom he shot, he intended to do so, and is, therefore, guilty of no crime. It is our conclusion that the judgment of the district court ought to be AFFIRMED.